In 1910 John Voorhees, now deceased, leased the northwest corner of Broad and Jersey streets, Elizabeth, to the Goerke *Page 160 
Company for forty years, with a renewal right of twenty more years. Demolishing an old structure then on the premises, the Goerke Company erected a six-story brick building covering the entire lot, eighty feet on Broad street and one hundred and forty feet on Jersey street, as it had agreed to do. The building became the property of the lessor under the terms of the lease. Eleven years later the Goerke-Kirch Company (assignee of the Goerke Company) leased from one Stein, for a long term, his L-shaped lot adjoining on the north and west, facing Broad and Jersey streets, and, tearing down an old building, erected a three-story brick store covering the entire lot, as it had agreed to do, and this building became the property of Stein by the terms of the lease. In the Voorhees lease it was provided that the lessee "shall have the right to connect any building on the demised premises with any building upon any adjoining premises," and the Stein lease had a corresponding clause. The stores were connected by cutting openings through the north and west walls of the Voorhees building. There are no interior walls to the Stein building on the Voorhees side; the exterior of the north and west walls of the latter building, plaster finished, form the inside walls of the Stein building. The roof is fastened to the Voorhees building and the ceilings extend into it one to three inches, resting in slots supported by angle irons. Instead of resting on walls, the floors and roof are supported by thirteen steel columns, on concrete piers, seven and a half feet long and correspondingly wide and deep and flaring, and all but one or two of the piers are set in the concrete footing of the Voorhees foundation eight or more inches, and, resting on center, the columns are flush with the walls. Either the concrete footing was chopped out down to the soil or only part way and rest in the footing. A column (No. 17) to support an opening in the northerly wall of the Voorhees building rests on a combination concrete pier that also serves to support a column (17A) in the Stein building.
The Stein building is heated by the boilers in the Voorhees building. The lighting system of the two buildings is a unit. A pipe of the sprinkler system of the Stein building extends through the basement wall of the Voorhees building, and a *Page 161 
supporting beam of the sprinkler tank extends over the roof of the Voorhees building two feet.
The bill prays for the removal of the encroachments and the restoration of the building; that the openings between the buildings be reduced to a reasonable size; that the covenants of the lease be construed and the rights of the parties declared; that it be determined whether the lease has been forfeited and that the lessee be compelled to perform its covenant to keep the premises insured.
The official plans of the Stein building show that it was designed to build without interior walls; to attach the roof and to support the floors and roof by columns upon concrete piers set in the concrete footing in the Voorhees building, and it is not disputed that the plans were followed in all respects except as to the pier at the northwest corner of the Voorhees building. There, the acceptable testimony is, the column and the one next southerly along the west wall rest on a combination pier laid alongside the building in the soil of the Stein lot. The combination pier upon which column 17 and 17A rest extends across the property line. It is said to have been put in as a single pier, to accommodate column 17 in the Voorhees wall, and to have been enlarged and extended into the Stein lot to support column 17A. How that was accomplished, if that was the way, is not explained. The probabilities are that column 17 originally rested on the footing of the Voorhees building and that the combination pier was later inserted somehow, maybe beneath the footing. Be that as it may, each column gets its share of soil support from its own property, and on that score the pier is unobjectionable, but having been constructed to accommodate column 17A, the use of it by column 17 being incidental, so much as extends beyond the Stein line must be looked upon as an encroachment. No harm has come to the Voorhees building by reason of any of the pier encroachments. Its stability has not been impaired, nor is there any proof that any at all may come in the future. They all can be removed by chopping off at the division line and permitting the concrete to remain as part of the footing, or by chipping it out entirely, restoring the footing by new concrete. *Page 162 
The right to connect the building with one adjoining was not intended to be limited to passageways. The long term, the erection of the building at the tenant's cost, and the character of the business — a department store — all indicate the conception of the parties to have been that if the tenant should extend its enterprise to the next door building the opening should be as well for the advantageous display of wares and to give the interior the appearance of a single store. That is common practice in cities, and it is fair to assume that the lessor was not without experience and for that reason did not limit the extent of the openings, save as to the structural integrity, and so that the building would be restorable at the end of the term in compliance with the tenant's covenant to surrender in "as good condition as reasonable use and wear thereof will permit." In this view it cannot be said that the openings are unreasonably large. An aggregate of thirty-eight feet of openings on each of the three floors in the one hundred and forty feet long north wall would seem to be well within moderation. The larger of the openings is adequately fortified by column 17, and the proof is that there is and can be no harm from this source. This cannot be said of the openings in the west wall. Forty of the ninety feet of this wall (the lot is wider in the rear) on each of the three floors was removed for doorways, each twenty feet in width, and a remnant of the wall, four feet six inches wide, retained as a pier to support the upper three stories. It is the only support and is out of plumb. This is poor construction, so both sides say. The stress is too great for the size of the pier. It has but a safety factor of five and should be double that in scientific construction. There are no present indications of weakness in the pier but there are cracks in the wall above, and the proof is that collapse from overstress is sudden, without warning. The remedy is simple; suitable columns on either side of the openings resting on the basement wall. That wall is safe to carry the load, so the builders say.
The right to connect does not include the right to heat the Stein store from the boilers in the Voorhees building. The landlord is entitled to a reversion of the boilers in as good a state as reasonable wear and tear will permit. The wear and *Page 163 
tear on the boilers and pipe system in the contemplation of the parties are such as would come from heating the demised premises only. In this respect the tenant is incapacitating itself from performing the covenant of surrender. The unit electric system seems not open to the same objection. There is no wear and tear, at least none is proven or apparent. The sprinkler system, apparently, is not a unit operated from the Voorhees property. Each building has its own tank. But, a pipe of the Stein system improperly enters the Voorhees basement for about twenty feet before it again returns to the Stein store. The beam overhanging the Voorhees roof from the Stein tank is removable by sawing off.
The erection of an independent wall, to eliminate the encroachment of the roof and ceiling of the Stein building and the use of the exterior wall of the Voorhees building for the interior of the Stein store, seems inevitable.
None of the encroachments finds justification in the right to "connect" the Voorhees building with the one adjoining. The right to connect is not to be conjured into a right to encroach. By fair intendment it is limited to openings, as already indicated. The encroachments were made to save the expense of an interior wall, upon agreement with Stein to omit it from his building for the time for compensation. They were deliberately made, covertly and under protest, and no attempt at justification is admissible. The encroachments are waste by the tenant, aided and abetted by Stein.
Now, as to form of relief. Can it be something short of restoration of the building at this time? The defendants' protest, that they will remove the encroachments at the end of the term, cannot be entertained. Even had they offered security, it would be a matter for negotiation between the parties. If it were a court question the defendants would not be entitled to serious equitable consideration because of their willfulness. And, in the meanwhile, the marketability of the demised premises would be greatly impaired, to the detriment of the trustee, if it has the power of sale, and to the cestuis que trust if they cared to part with their interest. There is nothing whatever in the conduct of the defendants that appeals to the court to ease them of the complainant's *Page 164 
right to an injunction restraining the continuance of the encroachments. That will be the decree, and a mandate that the tenant support the openings in the west wall. Klie v. VonBroock, 56 N.J. Eq. 18; Hirschberg v. Flusser, 87 N.J. Eq. 588;Krich v. Zemel, 96 N.J. Eq. 208; Capone v. Ranzulli, 99 N.J. Eq. 627; 1 High Inj. § 434; 27 R.C.L. Waste ¶ 38; Kerr Inj.231. The claim of the defendants that the complainant is estopped because it offered no protest during the progress of the encroachments (which is not true) is met by the fact that the defendants knowingly trespassed and at their peril.
The attack upon the court's jurisdiction is without merit. The title to the premises is not in dispute; the encroachments are not denied, and the complainant's legal rights are not in doubt because the meaning of "connect" is debatable. It is the privilege and duty of this court to determine the true construction.
The tenant covenanted to keep the building insured "to the full insurable value." The effected insurance is $225,000. The proof is, and it is not controverted, that the building's value is $286,548. The additional insurance will be ordered.
The request to pass upon the question whether the tenant has breached the covenant of the lease, so as to produce a forfeiture, is declined. The complainant is not entitled to a determination whether it shall or may sue to recover possession. If it feels that it has a cause of action on that score it may submit it to the law courts. It has not the right to demand a decision under the Declaratory Judgment act of 1924. A declaration of legal rights may be had in the law courts only.Paterson v. Currier, 98 N.J. Eq. 48.
The form of the decree will be settled upon notice. *Page 165